IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRIS KIRK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.3:17-cv-800-WKW-SRW |
| ) | |
| CITY OF VALLEY, *et. al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

**I.     Introduction**

Pursuant to 28 U.S.C. §636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a recommendation as may be appropriate. (Doc. 4). Plaintiff filed her complaint *pro se,* alleging claims for retaliatory discharge in violation of her First Amendment right to free speech (Doc. 1 at ¶¶ 23-28), and gender discrimination (Doc. 1 at ¶¶ 29-31), against the City of Valley (Doc. 1 at ¶ 5) and Leonard Riley, the mayor of Valley, in his official capacity. (Doc. 1 at ¶ 6). Thereafter, the defendants filed a motion to dismiss (Doc. 7) and brief in support (Doc. 8). Plaintiff, having retained counsel, filed a motion for leave to file an amended complaint and to declare the motion to dismiss moot. (Doc. 16). The court granted this motion. (Doc. 17). Plaintiff, with the benefit of counsel, then filed an amended complaint which did not include a gender discrimination claim, and named Riley as a defendant in his official capacity only. (Doc. 18).

This matter is pending before the court on the City of Valley's motion to dismiss the amended complaint (Doc. 19), and Riley's motion to dismiss the amended complaint (Doc. 24), in support of which defendants have filed briefs (Docs. 20, 25). Plaintiff has filed briefs in opposition

1

to these motions (Docs. 22 and 26), and Defendants have filed replies. (Docs. 23, 28). For the reasons that follow, the Court concludes that Defendants' motions are due to be granted and this action dismissed with prejudice.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6), the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct.1937, 1949 (2009) as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678-679 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.,* at 195; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough

heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (quotation omitted.) "To survive a motion to dismiss, a complaint need not contain 'detailed factual allegations' but instead the complaint must contain 'only enough facts to state a claim to relief that is plausible on its face.'" *Maddox v. Auburn Univ. Fed. Credit Union,* 441 B.R. 149, 151 (M.D. Ala. 2010) (Citation omitted). Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiff is required to "allege more by way of factual content to nudge [her] claim … across the line from conceivable to plausible." *Iqbal,* 129 S. Ct. at 1952 (internal editing and citation omitted.) With these standards in mind, the Court turns its attention to the Defendants' motions to dismiss.

### III.   Facts

In her amended complaint, Plaintiff alleges that she was employed by the City of Valley as the Human Resources/Accounting Technician until her termination on September 22, 2016. (Doc. 18 at ¶ 7). Plaintiff alleges that she met with the chief of police and Police Captain Cox to discuss Cox's pending retirement. Cox indicated that, following his retirement, Mayor Riley was going to hire him as a part-time employee and allow him to keep part of his sick leave. Plaintiff states that she told the chief and Cox that "Cox could not work for thirty (30) days after his retirement, and that part-time employees do not receive sick leave." (Doc. 18 at ¶ 8). Plaintiff next met with the "City Clerk/Treasurer to inquire about sick leave for part-time employee," and the latter confirmed that part-time employees do not earn sick leave. (Doc. 18 at ¶ 9).

Subsequently, Plaintiff and the city clerk/treasurer met with Mayor Riley about this issue. Plaintiff states that she "explained that part-time employees did not receive sick leave, and that it

3

may be a violation of ERISA rules if the City of Valley provided Captain Cox sick leave as a part-time employee but did not provide sick leave to other part-time employees." Mayor Riley told Plaintiff that "she was wrong," and that he had a meeting the next day with an attorney and would inquire, but denied Plaintiff's request to attend the meeting with him. (Doc. 18 at ¶ 10). Plaintiff states that "Mayor Riley also denied … [her] the opportunity to discuss the issue in a committee meeting with the City Council in her capacity as Accounting Technician." (Doc. 18 at ¶ 11).

Thereafter, Plaintiff attended the city council meeting at which "the resolution"[1] was introduced. Plaintiff represents that "because ... [she] believed this issue was a matter of public concern and potentially illegal, she expressed her concerns as a citizen[2] of Valley, Alabama to City Council Member Jim Jones before the meeting began." (Doc. 18 at ¶ 12). Plaintiff also says that "it was not in her regular duties as a city employee to attend City Council meetings … [and] it was not in her regular duties to notify City Council members of ordinances or other city business." [3] (Doc. 18 at ¶ 13). Following a meeting in the mayor's office at which he "accused" Plaintiff of speaking to Councilman Jones, Plaintiff was terminated by Mayor Riley for "insubordination, conduct unbecoming of an employee, abusive conduct, inefficiency and neglect of duty." (Doc. 18 at ¶¶15-17). Plaintiff contends that the reasons given by Mayor Riley for firing her are pretextual and that "she was terminated in retaliation for engaging in protected speech." (Doc. 18 at ¶ 18).

---

[1] The amended complaint refers to "the resolution," Doc. 18 at 3, but does not indicate the content of the resolution. For purposes of the instant motions, the court assumes that "the resolution" would have had the effect of permitting Captain Cox to receive sick leave as a part-time employee.

[2] In Plaintiff's original complaint, which she filed *pro se*, she states that "she expressed her concerns, both as an employee and as a citizen of Valley, Alabama, to Councilman Jim Jones." (Doc. 1 at ¶ 12).

[3] In Plaintiff's original complaint, which she filed *pro se*, she states that "it was within the normal duties and parameters of …[her] job for her to speak with council members regarding city issues. (Doc. 1 at ¶17). She also says that she informed Mayor Riley that "it was her job to be an advocate for city employees while minimizing the risk of legal action for the City." (Doc. 1 at ¶16).

### IV. Analysis

The issue before this court on the motions to dismiss is whether Plaintiff, as a public employee holding the position of Human Resources/Accounting Technician with the City of Valley, states a claim for First Amendment retaliatory firing based upon her private communications with a city councilman about the issue of sick leave for a part-time employee. The law is well-settled that for the speech of a public employee to be constitutionally protected, the threshold inquiry is whether the employee spoke "(1) as a citizen and (2) on a matter of public concern." *Alves v. Bd. Regents of Univ. Sys. of Ga.,* 804 F. 3d 1149, 1161 (11th Cir. 2015) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958, 164 L.Ed.2d 689 (2006)). The two-part inquiry presents questions of law for the court to decide. *Id.* at 1159 (citations omitted).

### A. Contradictory Allegations in the Original and Amended Complaints

As an initial matter, the court will address Defendants' argument that it should consider certain of Plaintiff's factual admissions contained in the original complaint which directly contradict Plaintiff's later factual admissions contained in the amended complaint. Specifically, Plaintiff states in her amended complaint that "it *was not* in her regular duties as a city employee to attend City Council meetings … [and] it *was not* in her regular duties to notify City Council members of ordinances or other city business." (Doc. 18 at ¶ 13)(emphasis added). However, in Plaintiff's original complaint, which she filed *pro se*, she states that "it *was* within the normal duties and parameters of …[her] job for her to speak with council members regarding city issues. (Doc. 1 at ¶17)(emphasis added). She also says that she informed Mayor Riley that "it was her job to be an advocate for city employees while minimizing the risk of legal action for the City." (Doc.

5

1 at ¶16). In short, Plaintiff's factual allegations in her original complaint concerning her job duties directly contradict those allegations about her job duties made in the amended complaint.

"[A]s a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Pintando v. Miami-Dade Housing Agency,* 501 F. 3d 1241, 1243 (11th Cir. 2007). However, defendants urge the court to follow a sister district court in Florida and the Second Circuit in deciding, for purposes of a motion to dismiss, that facts from an original complaint may be accepted as true when they "directly contradict[]" the facts in an amended complaint and where "plaintiff made a 'transparent attempt … to amend his pleading[s] in order to avoid a dispositive defense." *Fernandez v. Sch. Bd. of Miami-Dade Co.* 201 F. Supp. 3d 1352, 1361, n.1 (S.D. Fla. 2016) (citing *Colliton v. Cravath, Swaine & Moore, LLP*, 2008 WL 4386764 at *6 (S.D.N.Y 2015), *aff'd* 356 Fed. Appx. 535 (2d Cir. 2009)). But, given the Eleventh Circuit's general rule, set out above, which is binding on this court – and the absence of any Eleventh Circuit opinion recognizing an exception to that rule – this court must decline to consider Plaintiff's allegations from her original complaint, even though they are directly contradicted in her amended complaint. Thus, the court will limit its consideration of Defendants' motions to dismiss solely to the allegations stated by Plaintiff in her amended complaint.

**B. Speech as a Citizen**

The Eleventh Circuit has held that the determination of whether a public employee speaks as a citizen or an employee

> "turns on whether the speech '*owes its existence to a public employees' professional responsibilities*' … If the speech does then '[r]estricting [it] … does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.'"

6

*Carollo v. Boria,* 833 F. 3d 1322, 1329 (11th Cir. 2016) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 421-22, 126 S.Ct. 1951, 164 L.Ed. 2d 689 (2006)) (emphasis added). The *Carollo* Court explained that the Supreme Court, in a later-decided case, *Lane v. Franks,* clarified what it meant in G*arcetti* by the phrase "owes its existence to" by stating that

> the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee – rather than citizen – speech. *The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.*"

*Carollo* , 833 F. 3d at 1329 (citing *Lane v. Franks*, 573 U.S. 228, 239, 134 S. Ct. 2369, 189 L.Ed.2d 312 (2014)) (emphasis added).

The only facts before the Court on defendants' motion to dismiss are the allegations of Plaintiff's amended complaint. No job description for Plaintiff's position as Human Resources/Accounting Technician is attached to that complaint. Nor would it be appropriate on a motion to dismiss for the court to attempt to interpret such a description, if it had been provided. *See Carollo,* 833 F. 3d at 1330 (citing *Garcetti,* 547 U.S. at 424-25 ("'The proper inquiry is a practical one' wherein '[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.'")). Rather, the court must examine the allegations of Plaintiff's amended complaint to determine Plaintiff's ordinary scope of duties as Human Resources/Accounting Technician for the City of Valley.

Plaintiff argues that her speech to a city councilman was protected by the First Amendment because she spoke as a concerned citizen, as opposed to an employee of the city. According to the allegations of the amended complaint, Plaintiff met with numerous city employees, including the police chief, a police captain, the city clerk/treasurer, the mayor, and a city councilman, in her capacity as a Human Resources/Accounting Technician concerning the rules for part-time

7

employees to earn sick leave, and the effect of those rules on the police captain's pending retirement and potential rehire to part-time employment with the City. (Doc. 18 at ¶¶ 8-12). Specifically, Plaintiff alleges that she thought "it may be a violation of ERISA if the City of Valley provided Captain Cox sick leave as a part-time employee, but did not provide sick leave to other part-time employees." (Doc. 18 at ¶ 10). Because she "believed this issue was a matter of public concern and potentially illegal, she expressed her concerns as a citizen of Valley, Alabama" to a city councilman. (Doc. 18 at ¶12).

The court acknowledges Plaintiff's allegation that "it was not in her regular duties as a city employee to attend City Council meetings … [and] it was not in her regular duties to notify City Council members of ordinances or other city business." (Doc. 18 at ¶13). However, the allegations set out above make it clear that Plaintiff dealt with city employees on the personnel issues of part-time employment, retirement and sick leave, and had opinions and concerns about city policy on these issues, which caused her to approach a city councilman to air these concerns. Thus, the allegations of Plaintiff's amended complaint demonstrate that, while it may have been outside Plaintiff's ordinary duties to speak about city business to a city councilman, the subject matter upon which she spoke arguably fell within her ordinary duties. However, because Plaintiff's communication to the city councilman may not itself have been "ordinarily within the scope of [the] employee's duties," *Carollo,* 833 F. 3d at 1329 (citing *Lane*, 573 U.S. at 239), the court will consider the question of whether it is plausible that Plaintiff spoke as a citizen as opposed to an employee on a matter of public concern.

C. Speech on a Matter of Public Concern

In *Alves,* the Eleventh Circuit explained that whether speech addresses a matter of public concern depends upon "the context of the speech," and the court must ask "whether the employee

8

spoke on a matter of public concern or on the matters of only personal interest." *Alves*, 804 F.3d at 1162 (citation omitted.). The *Alves* Court indicated that "[t]o fall within the realm of 'public concern,' an employee's speech must relate to 'any matter of political, social, or other concern to the community.'" *Id.* (citing *Connick v. Myers,* 461 U.S. 138, 146, 103 S. Ct 1684, 75 L. Ed. 2d 708 (1983)). "The inquiry turns on 'the content, form and context of a given statement, as revealed by the whole record.'" *Id.* (citing *Connick,* 461 U.S. at 147-48).

As discussed above, the content of Plaintiff's speech as described in the amended complaint involved the rules for part-time employees to earn sick leave and the effect of those rules upon the police captain's pending retirement and potential rehire to part-time employment with the city. (Doc. 18 at ¶¶ 8-12). Plaintiff alleges that she believed the mayor's plan to allow Captain Cox to keep his sick leave after retiring from full-time employment, and then become a part-time employee, violated ERISA if sick leave were not provided to other part-time employees. (Doc. 18 at ¶10). Further, Plaintiff alleged that "[b]ecause she believed this was a matter of public concern and potentially illegal," she spoke to "City Council Member Jim Jones before the [City Council] meeting began." (Doc. 18 at ¶ 12). However, the Eleventh Circuit has specifically held that "matters such as grievance procedures, vacation policies, promotion guidelines and pension benefits … relate to employment issues and just because they arise in a governmental office does not transform them into matters of public concern." *Anderson v. Burke Co.,* 239 F. 3d 1216, 1220 (11th Cir. 2001). In the case at bar, the content of the speech at issue concerns sick leave, which is closely akin to those matters which the Eleventh Circuit has categorized as "employment interests, which would ordinarily only concern people in their capacities as … employees." *Id.*

Plaintiff also alleges in her amended complaint that she spoke privately to a single city council member about her concerns regarding the mayor's sick leave policies, not to the full

council prior to the meeting. (Doc. 18 at ¶ 12). "[T]he employee's attempt to make her concerns public along with the employee's motivations in speaking" are relevant to this Court's inquiries into form and context. *Alves*, 804 F. 3d at 1162. The court concludes that Plaintiff did not attempt to communicate her concerns publicly. *See id.* ("[W]hether the speech at issue was communicated to the public or privately to an individual is relevant – but not dispositive.").

As to Plaintiff's motivation for the speech, the court recognizes that Plaintiff alleges she "believed" the Mayor's sick leave policies were a "violation of ERISA" (Doc. 18 at ¶¶ 10, 12) – and, as such, "a matter of public concern and potentially illegal." (Doc. 18 at ¶ 12). However, "[m]entioning 'possible' liability for perceived wrongdoing in the future does not transform [Plaintiff's] speech into that of a citizen protesting on behalf of the public." *King v. Board of County Commissioners*, 2019 WL 988467, at *6 (11th Cir. 2019). In addition, it is clear that Plaintiff's concern about a possible ERISA violation arose out of her duties as a Human Resources/Accounting Technician who dealt with sick leave policies. "She was not a concerned citizen who happened to become aware of [the sick leave eligibility question] and decided to do something about it." *See id.*, 2019 WL 988467, at *5 (11th Cir. 2019); *see also id.* ("[T]he starting point of [Plaintiff's] speech was her official duties, which suggests she was not speaking as a private citizen."); *id.* at 7 ("At bottom, the impetus for her speech was frustration at work, not fear for public safety or the public purse."). Further, it is undisputed that Plaintiff's concern was mistaken. ERISA, by its express terms, neither applies to local governments, *see* 29 U.S.C. §§ 1003(b)(1), 1002(32), nor to employer-funded sick leave. *See* 29 U.S.C. § 2510.3-1(b)(2); *see also Stern v. Int'l Bus. Machines Corp.,* 326 F. 3d 1367, 1370 (11th Cir. 2003). Plaintiff's speech concerning her mistaken belief of fact does not materially advance society's interest in "uninhibited, robust, and wide-open debate on public issues." *Keller v. Miami Herald, Pub.*

*Co.,* 778 F. 2d 711, 715 (11th Cir. 1985) (quoting *Gertz v. Robert Welch,* 418 U.S. 323, 339-40 (1974)). Further, even assuming that Plaintiff's concern was valid under ERISA, the court concludes that because the allegations in Plaintiff's amended complaint demonstrate that the content of her speech concerned employment issues about which she merely complained privately to a city councilman, Plaintiff fails to state a plausible First Amendment claim. *See King*, 2019 WL 988467, at *5 (11th Cir. 2019) (Plaintiff "spoke pursuant to her official job duties, the purpose of her speech was work-related, and she never spoke publicly. When viewed together, these factors paint a clear picture of a person speaking as an employee and not as a private citizen.") (citing *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1161 (11th Cir. 2015)).

**D. Qualified Immunity**

Plaintiff alleges that Defendant Leonard Riley, in his capacity as mayor of the City of Valley, terminated her employment. (Doc. 18 at ¶ 17). Defendant Riley contends that his actions are protected by qualified immunity. The law is well-settled that a defendant asserting the defense of qualified immunity has the burden of establishing that he acted within his discretionary authority, and, once he does, the burden shifts to the plaintiff to show that qualified immunity should not apply. *See Lewis v. City of West Palm Beach, Fla.,* 561 F. 3d 1288, 1291 (11th Cir. 2009). The fact that Mayor Riley acted within his discretionary authority in terminating Plaintiff's employment is undisputed. Thus, the Court turns its attention to the question of whether qualified immunity applies in this instance.

The court first must determine whether Mayor Riley's firing Plaintiff for insubordination "amounted to a constitutional violation." *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)). Because it has previously concluded that Plaintiff has failed to show for purposes of the defendants' motions to dismiss that her speech addressed a matter of

public concern, the court concludes that she has not demonstrated a constitutional violation and that qualified immunity applies. The inquiry could end here. However, for the sake of completeness, the court will assume a constitutional violation *arguendo,* and address Plaintiff's argument that the state of the law on September 22, 2016 – the date of Plaintiff's termination – gave Mayor Riley "fair warning" that his termination of Plaintiff's employment based on her speech was unconstitutional. *Williams v. Consol. City of Jacksonville,* 341 F. 3d 1261, 1270 (11th Cir. 2003)(citation omitted).

Plaintiff points to *Beckwith v. City of Daytona Beach Shores,* 58 F. 3d 1554, 1557-59 (11th Cir. 1995), contending that this case gave Mayor Riley notice that his conduct was unconstitutional. *See Lewis,* 561 F. 3d at 1291-1292 ("A right may be clearly established for qualified immunity purposes . . . [by] case law with indistinguishable facts clearly establishing the constitutional right."). Plaintiff maintains that her situation is indistinguishable from *Beckwith* because Beckwith was terminated from employment with the City following his comments about a "particular concern about a proposal to discontinue the City's paramedic program during a city council meeting." (Doc. 27 at p. 9). However, in *Beckwith*, the Eleventh Circuit noted that "few subjects are of more public concern to the average citizen than the provision of basic fire and rescue services." *Id.* at 1564. Whereas Beckwith complained about the defunding of paramedic services, here Plaintiff expressed concern over the application of sick leave policies to part-time employees. As this court has previously concluded, under current case law, this speech is not on a matter of public concern sufficient to merit First Amendment protection.

**V.     Conclusion**

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendants' Motions to Dismiss (Docs. 19 and 24) be GRANTED, and that this case be DISMISSED with prejudice.

It is further ORDERED that the parties may file any objections to this Recommendation on or before **March 22, 2019.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done, on this the 8th day of March, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge