IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHRIS KIRK,                         )
                                    )
            Plaintiff,              )
                                    )
    v.                              )        CASE NO. 3:17-CV-800-WKW
                                    )               [WO]
CITY OF VALLEY, ALABAMA,            )
*et al.*,                           )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

In March 2019, the Magistrate Judge filed a Recommendation (Doc. # 29) that the pending motions to dismiss (Docs. # 19, 24) be granted and that Plaintiff Chris Kirk's claims against Defendants, the City of Valley and Mayor Leonard Riley be dismissed with prejudice. Plaintiff filed timely objections (Doc. # 30) and Defendants filed a response to the objections (Doc. # 31). The court has conducted an independent and *de novo* review of those portions of the Recommendation to which objection is made. *See* 28 U.S.C. § 636. After careful review of the law, allegations, and arguments, the court finds that the objections are due to be overruled and the motions to dismiss granted.

## I.     JURISDICTION AND VENUE

Because Plaintiff's claims arise under a federal statute, 42 U.S.C. § 1983, the court has federal-question subject-matter jurisdiction. 28 U.S.C. § 1331. The parties

do not contest personal jurisdiction or venue.

## II.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  Rule 8 provides that the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss under Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  However, the court need not accept mere legal conclusions as true.  *Id.* at 1325.

To survive a 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal under Rule 12(b)(6) is also permitted "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *see also Neitzke*

*v. Williams*, 490 U.S. 319, 326–27 (1989) (explaining that the rule allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## III.   BACKGROUND

Plaintiff makes no objection to the following facts, which are set out in Part III of the Recommendation.  Plaintiff was employed by the City of Valley, Alabama, as a "Human Resources/Accounting Technician" from December 2012, until September 2016.  (Doc. # 18, at 2.)  Plaintiff's amended complaint does not include a job description.  But it can be reasonably inferred from the allegations that Plaintiff dealt with personnel issues involving city employees.  (*See* Doc. # 29, at 3-4.)  That inference is based not only on what was included in Plaintiff's job title ("Human Resources"), but also on Plaintiff's August 2016 meeting with Police Chief Weldon and Captain Cox about Cox's upcoming retirement.[1]

At that meeting, Cox informed Plaintiff that after Cox's retirement, Mayor Riley was going to hire Cox as a part-time employee and that he was going to allow Cox "to keep part of his sick leave."  (Doc. # 18, at 2.)  Plaintiff told Cox that he could not work for thirty days following his retirement and that "part-time employees do not receive sick leave."  (Doc. # 18, at 3.)

When Weldon insisted that Mayor Riley was going to allow Cox to keep some

---

[1] The amended complaint does not give the first names of Weldon or Cox.  Nor does it give Cox's full title.

of his sick-leave time, Plaintiff said she would talk to Mayor Riley about it.  (Doc. #
18, at 3.)  Before meeting with Mayor Riley, Plaintiff met with Kathy Snowden, the
"City Clerk/Treasurer," who confirmed that part-time employees do not receive sick
leave.  (Doc. # 18, at 3.)

Plaintiff then met with Mayor Riley to tell him that part-time employees do
not receive sick leave and that "it may be a violation of ERISA rules if the city gave
Cox sick leave but did not give sick leave to other part-time employees."  (Doc. #
18, at 3.)  Mayor Riley told Plaintiff that "she was wrong" and that he "had the
discretion to make this change."  (Doc. # 18, at 3.)

On September 12, 2016, Plaintiff attended the city council meeting "where
the resolution was introduced."[2]  Because Plaintiff believed Mayor Riley's proposal
"was a matter of public concern and potentially illegal, she expressed her concerns
as a citizen of Valley, Alabama, to City Council Member Jim Jones before the
meeting began."  (Doc. # 18, at 3.)  Going to a city council meeting and talking to
city council members about ordinances or other city business "was not in [Plaintiff's]
regular duties as a city employee."  (Doc. # 18, at 4.)

Plaintiff's lobbying Council Member Jones was apparently successful.  Jones
was alone in voicing opposition to and voting against the resolution.  (Doc. # 18, at

---

[2] The amended complaint does not explain what the resolution was, but it can be reasonably
inferred that the resolution dealt with Cox's sick leave.

4.)  But the resolution still passed.

Three days after the city council meeting, Mayor Riley met with Plaintiff and told her that speaking with Council Member Jones before the city council meeting amounted to insubordination and asked Plaintiff to resign.  (Doc. # 18, at 4.)  He further stated that employees could not speak to council members about city business.  (Doc. # 18, at 4.)  After Plaintiff refused to resign, Mayor Riley fired her, citing "insubordination, conduct unbecoming an employee, abusive conduct, inefficiency, and neglect of duty."  (Doc. # 18, at 4.)

Plaintiff then filed this lawsuit, alleging that the City of Valley (Count One) and Mayor Riley (Count Two) fired her in retaliation for exercising her First Amendment rights.  (Doc. # 18.)

## IV.   DISCUSSION

The crux of Plaintiff's First Amendment claim is that "the reasons given by Mayor Riley and the City of Valley for her termination are pretextual, and instead . . . she was terminated in retaliation for engaging in protected speech."  (Doc. # 18, at 4.)

A government employee may not be terminated in retaliation for speech protected under the First Amendment.  *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment."); *see also Rankin v.*

*McPherson*, 483 U.S. 378, 383 (1987) ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."). But public employees do not enjoy an absolute right to freedom of speech. *Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000). Given the nature of public service, a government employee "must accept certain limitations on [her] freedom." *Garcetti*, 547 U.S. at 418. The Supreme Court in *Garcetti* set out what is required for a public employee's speech to be entitled to protection. The first inquiry, the only inquiry at issue,

> requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises.

*Id.* (cleaned up). Therefore, the First Amendment only protects Plaintiff's speech if it was made "(1) as a citizen and (2) on a matter of public concern." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1160 (11th Cir. 2015). Both "are questions of law for the court to resolve." *Id.* at 1159.

In her Recommendation (Doc. # 29), the Magistrate Judge found that Plaintiff's speech was made neither as a citizen nor on a matter of public concern. The court agrees with the thorough Recommendation and will not repeat all of its analyses here.

The thrust of Plaintiff's objection (Doc. # 30) relates to the public concern

element.  Plaintiff wants her speech to Councilman Jones to be interpreted as a matter of public concern because "the City's potential violation of ERISA" and "an evaluation of Mayor Riley's performance in his public service" are matters of public concern.  (Doc. # 30, at 4, 7.)  Not so.  "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark — and certainly every criticism directed at a public official — would plant the seed of a constitutional case. . . . [T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."  *Connick v. Myers*, 461 U.S. 138, 149 (1983).  For First Amendment purposes, an "employee's speech will rarely be entirely private or entirely public.  Rather than categorize each phrase the employee uttered, we consider whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee."  *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993) (citations omitted).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Connick*, 461 U.S. at 147-48.

Here, the content, form, and context of Plaintiff's speech indicate that she spoke privately in her role as a human resources specialist.  The content of Plaintiff's speech focused on the legality of Captain Cox's receiving sick leave as a part-time employee.  This is analogous to "vacation policies, promotion guidelines and

pension benefits," which the Eleventh Circuit has long excluded from the public concern category.[3] *Anderson v. Burke Co.*, 239 F. 3d 1216, 1220 (11th Cir. 2001). The form of Plaintiff's speech was a private oral communication with a single city council member regarding the mayor's part-time employee sick leave policy. *See Alves,* 804 F.3d at 1162 (although not dispositive, "whether the speech was communicated to the public or privately to an individual is relevant"). And the context is evident from Plaintiff's desire to "discuss the issue . . . in her capacity as Accounting Technician." (Doc. # 18, at 3.)

Plaintiff argues that her speech was a matter of public concern "[b]ecause potential wrongdoing by city officials is a subject of general interest and of value and concern to the public." (Doc. # 30, at 8.) But the Eleventh Circuit "emphasized that the relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather . . . whether the purpose of the plaintiff's speech was to raise issues of public concern." *Maggio*, 211 F.3d at 1353 (cleaned up). The Magistrate Judge correctly addressed this issue:

> As to Plaintiff's motivation for the speech, the court recognizes that Plaintiff alleges she "believed" the Mayor's sick leave policies were a "violation of ERISA" (Doc. 18 at ¶¶ 10, 12) and, as such, "a matter of public concern and potentially illegal." (Doc. 18 at ¶ 12). However, "[m]entioning 'possible' liability for perceived wrongdoing in the future does not transform [Plaintiff's] speech into that of a citizen protesting on behalf of the public." *King v. Board of County*

---

[3] The Supreme Court recognized the difficulty of finding exact factual precedent on these issues because of "the enormous variety of fact situations." *Garcetti*, 547 U.S. at 418.

*Commissioners*, 2019 WL 988467, at *6 (11th Cir. 2019). In addition, it is clear that Plaintiff's concern about a possible ERISA violation arose out of her duties as a Human Resources/Accounting Technician who dealt with sick leave policies. "She was not a concerned citizen who happened to become aware of [the sick leave eligibility question] and decided to do something about it." *See id.*, 2019 WL 988467, at *5 (11th Cir. 2019); *see also id.* ("[T]he starting point of [Plaintiff's] speech was her official duties, which suggests she was not speaking as a private citizen."); *id.* at 7 ("At bottom, the impetus for her speech was frustration at work, not fear for public safety or the public purse.").

(Doc. # 29, at 10.) Additionally, Councilman Jones was at least the fifth person to hear Plaintiff's concerns about whether or not Captain Cox would receive sick leave as a part-time employee. The motivation behind Plaintiff's speech can be derived from her four previous conversations with Captain Cox, Chief Weldon, Ms. Snowden, and Mayor Riley and her desire to "discuss the issue in a committee meeting with the City Council in her capacity as Accounting Technician." (Doc. # 18, at 3.)

Overall, after careful consideration, the court finds that the cases Plaintiff cites are distinguishable, that the Recommendation is correct, and that Plaintiff's objections lack merit.

## V.   CONCLUSION

Having examined the allegations pertaining to the content, form, and context of Plaintiff's speech, the court concludes as a matter of law that Plaintiff's speech — a mistaken belief about the legality of whether Captain Cox could receive sick leave as a part-time employee — is not a matter of public concern.

Accordingly, it is ORDERED as follows:

(1)     Plaintiff's objections (Doc. # 30) are OVERRULED.

(2)     The Recommendation (Doc. # 29) is ADOPTED.

(3)     Defendants the City of Valley's and Mayor Leonard Riley's motions to dismiss (Docs. # 19, 24) are GRANTED.

(4)     All claims against the City of Valley and Mayor Leonard Riley are DISMISSED with prejudice.

A separate final judgment will be entered.

DONE this 4th day of September, 2019.

_/s/ W. Keith Watkins_
UNITED STATES DISTRICT JUDGE
